The **FIRST NATIONAL BANK OF ELK-HART COUNTY, Executor of the Estate of Henry C. Higgason, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 70 S 19.**

United States District Court, N. D. Indiana, South Bend Division.

April 16, 1971.

F. LeRoy Wiltrout, Thomas V. Happer, Elkhart, Ind., for plaintiff.

Richard L. Kieser, Asst. U. S. Atty., South Bend, Ind., for defendant.

GRANT, Chief Judge.

### MEMORANDUM

Plaintiff, as executor of Henry Higgason's estate, seeks a refund of income taxes which the decedent, under an alleged claim of right, reported and paid for several years prior to his death.

Higgason had been a self-employed optometrist for many years. On 1 May 1952 he executed an employment agreement with one Stanley Warner whereby Warner, who agreed to enter the optometry firm, was to receive a fixed percentage of the net profits of the firm. The two continued in practice together until Higgason's death in 1967. Following the death, the executor-bank conducted an audit of the optometry firm to determine the value of its assets for tax purposes and, pursuant to the employment agreement, to fix a reasonable price for its sale to Warner.

That audit disclosed that by reason of an erroneous accounting method which had been used in computing the compensation of Warner, he had been underpaid the total sum of $43,505.79 during the years 1953 to 1966 inclusive. Warner thereupon made a claim against the Estate, and the Probate Court approved a $25,000.00 settlement for the entire claim.

The settlement represented shortages in salary due and unpaid to Warner for the years 1963 through 1966, as shown by Higgason's adjusted gross income in his tax returns for this period. After the settlement was effected, the Estate claimed a deduction of $25,000.00 against Federal and State estate taxes which the defendant allowed. The Estate also recomputed the decedent's income taxes for the prior years as if the amounts payable to Warner had been paid and then determined that Higgason had overpaid his taxes in the amount of $12,218.18, the sum it now seeks to recover by way of refund.

The parties have extensively briefed the issues involved, and the Court took its decision under advisement following oral arguments on Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss.

Plaintiff contends it is entitled to a refund of the recomputed overpayment of income taxes for 1963–1966 pursuant to Section 1341 of the Internal Revenue Code of 1954. Section 1341 allows to a taxpayer a refund or credit if:

"(1) an item *was included in gross income* for a prior taxable year because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year that the taxpayer did not have an unrestricted right to such item \* \* \*; and (3) the amount of such deduction exceeds $3,000.00 \* \* \*."
(our emphasis)

Defendant, in its Motion to Dismiss, asserts that Plaintiff is not entitled to a refund or credit under § 1341 for the following reasons:

1. An estate is not entitled to succeed to the benefits conferred upon a living taxpayer. The mistaken payments were part of an intervivos transaction between Higgason and Warner; thus only Higgason and not his Estate could claim under § 1341.

2. Assuming that the Estate is eligible for § 1341 treatment and a refund, the § 642 prohibition against double deductions precludes Plaintiff's recovery.

3. Plaintiff has failed to demonstrate that the refund it seeks would have been a properly allowable deduction as the Statute requires.

4. The salary was not included in *gross income* under a claim of right, but rather in the decedent's *adjusted gross income*. The Section requires that the claim of right attach to funds retained in *gross* as distinguished from *adjusted* gross income as in the instant case.

We grant Defendant's Motion to Dismiss on the basis of the last argument it makes. Section 1341 clearly indicates that the item retained under a claim of right must be included in the taxpayer's *gross* income. The funds here in issue were included in Higgason's gross income along with other items of the optometry firm's income. However, Higgason's right to these funds remained unrestricted, the obligation to Warner notwithstanding. Thus, the deficiency in payments were held under a claim of right in Higgason's *adjusted gross* in-

come as opposed to his gross income. If, for example, the firm had mistakenly billed and overcharged one of its clients, paid taxes on the amount remitted, and then recompensed the client in a subsequent tax period, § 1341 could be given effect as the repaid item would have been retained under a claim of right in gross income.

Plaintiff relies principally upon the case of Estate of Good v. United States, 208 F.Supp. 521 (E.D.Mich.1962), in which the court held that funds retained under a claim of right during a decedent's lifetime entitled his estate to § 1341 treatment. *Good* is distinguishable from the case at bar for the reason that the funds were mistakenly made part of the *gross* income. Plaintiff also cites Killeen, et al. v. U. S., 11 A.F.T.R. 2d 1072 (S.D.Calif.1963) where a recovery under § 1341 was made by the estate of a deceased partner whose partnership firm had restored mistakenly withheld portions of its net profits to a third party. Although it would appear that the profits were withheld in *adjusted gross* income under a claim of right, the decision in Killeen does not make it clear whether this point was litigated or made part of admissions in a pre-trial conference order.

■ There appears to be no direct authority on the point in issue. However, other cases interpreting and giving effect to § 1341 are consistent with our view. *Good,* supra; Holbrook v. U. S., 194 F.Supp. 252 (D.C.Or.1961); Bellows v. Comm., P-H Memo T.C., par. 67, 199 (1967); Cookingham v. U. S., C.C.H. U.S. T.C. 63–1, par. 9303; Estate of Stein v. Comm., 37 T.C. 945 (1962). In all of the above-cited cases, the taxpayer attempted to gain § 1341 treatment for repayments included in *gross* income as distinguished from *adjusted gross* income. The claim of right doctrine was first enunciated in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), a case involving the tax consequences of profits made part of *gross income.*

The legislative history of § 1341 bears out our interpretation of *"gross income".* 3 U.S.Code Cong. & Adm.News p. 4436 (1954). The purpose of this 1954 amendment to the Code was to extend the options to a taxpayer repaying funds received under a claim of right which, under common law rule, had been limited to a deduction in the year of repayment. United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951), is cited in the legislative report as exemplary of the inequities of the common law rule. In *Lewis* the court rejected taxpayer's argument that he was entitled to a refund for taxes paid in a prior year on a part of a mis-computed salary bonus he was subsequently compelled to repay. The notion that only a payee of funds under a claim of right, who subsequently is required to refund the funds to his original payor is eligible for a recovery under § 1341, is suggested by the choice of the *Lewis* case. Additionally, the legislative history discussing the method of recomputation under § 1341 distinguishes between *gross* income and *adjusted gross* income. Cong. & Adm. News, supra, page 4437.

■ The Internal Revenue Code has provided distinct and separate definitions for *gross income* and *adjusted gross income.* The two terms' definitions are given applicability throughout Subtitle A of the Code of which § 1341 is a part. I.R.C. §§ 61, 62 (1954). Thus, we do not feel that the terms may be used interchangeably with respect to § 1341. As a general rule of construction, provisions related to exceptions from general rules of taxation must be narrowly construed and applied. United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940); Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

Accordingly, we grant Defendant's Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment.